[No. 13922-1-III. Division Three. June 27, 1996.]
DOUBLE D. HOP RANCH, ET AL., *Respondents,* v.
EDUARDO T. SANCHEZ, *Appellant.*

392

Charles H. Barr, for appellant.

Christine O. Gregoire, Attorney General, and Leslie V. Johnson, Assistant; and Rockney L. Jackson and Menke & Jackson, for respondents.

Linda A. Sellers on behalf of Hop Growers of Washington, amicus curiae.

SWEENEY, C.J., — Washington law provides for two methods of computing monthly wages for purposes of Department of Labor and Industries workers' compensation claims, one for workers employed year-round (RCW 51.08.178(1)) and one for exclusively seasonal workers

(RCW 51.08.178(2)). The trial court here concluded that Eduardo T. Sanchez's employment was exclusively seasonal in nature. The primary question presented is whether a general farm worker whose pattern was to work from March to November, but whose job can be performed throughout the year, was employed exclusively seasonal. We conclude that he was and affirm the trial court.

## FACTS

In May 1988, the Double D. Hop Ranch (Double D) hired Mr. Sanchez as a general farm laborer. In 1988, he worked from May through October. In 1989, Mr. Sanchez worked from February until early November. In 1990, he worked from February until November 9, when he was injured on the job. As a general farm laborer, Mr. Sanchez worked at a number of different tasks, including planting and cultivating hops, digging ditches, driving a tractor and other odd jobs.

On November 26, 1991, the Department of Labor and Industries (the Department) awarded Mr. Sanchez monthly time loss compensation. It based that compensation on the conclusion that Mr. Sanchez was a seasonal worker (RCW 51.08.178(2)). The statute requires that the Department calculate the monthly time loss rate on an average of wages for "any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern." RCW 51.08.178(2). The Department averaged Mr. Sanchez's wages from the fourth quarter of 1989 through the third quarter of 1990.

Mr. Sanchez appealed the Department's order to the Board of Industrial Insurance Appeals (the Board). He argued that his employment was not exclusively seasonal and his benefits should therefore have been based on "the monthly wages [he] was receiving from all employment at the time of injury . . . ." RCW 51.08.178(1). Following a hearing, the Board's Industrial Appeals Judge (IAJ) issued a proposed decision and order that Mr. Sanchez was not a

seasonal or part-time worker. Both Double D and the Department appealed the proposed decision and order. The Board denied the petitions for review and adopted the IAJ's decision.

Double D appealed to the Yakima County Superior Court. The superior court concluded Mr. Sanchez was a seasonal worker based on his work history. He appeals.

## DISCUSSION

■■ Employment Exclusively Seasonal in Nature. The question presented requires a two-step analysis. We must first decide what the Legislature meant by "the worker's employment is exclusively seasonal in nature." *Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 150, 736 P.2d 265 (1987) ("The function of judicial interpretation of statutory enactments is to effectuate the object and intent of the Legislature."), *review denied*, 123 Wn.2d 1030 (1994). We must then decide whether the evidence is sufficient to support the trial court's finding that Mr. Sanchez's employment "would not have existed during the cold-weather months of the winter of 1990-1991." *See Ravsten*, 108 Wn.2d at 146 (appellate court must ascertain that sufficient evidence exists to support findings of trial court).

Mr. Sanchez argues that we should accord "substantial weight" to the Department's interpretation of these statutes. *Flanigan v. Department of Labor & Indus.*, 65 Wn. App. 119, 121, 827 P.2d 1082 (1992), *aff'd in part, rev'd & remanded in part*, 123 Wn.2d 418, 869 P.2d 14 (1994). And certainly the expertise of administrative bodies is a valuable aid in interpreting legislation and filling in legislative gaps. *Balser Invs., Inc. v. Snohomish County*, 59 Wn. App. 29, 37, 795 P.2d 753 (1990). He also correctly urges that we should liberally construe the industrial insurance act to afford those benefits or remedies provided under the act. *Sacred Heart Med. Ctr. v. Carrado*, 92 Wn.2d 631, 635, 600 P.2d 1015 (1979); *Wilber v. Depart-*

*ment of Labor & Indus.*, 61 Wn.2d 439, 446, 378 P.2d 684 (1963).

We turn then to the Department's interpretation of the three pivotal words of RCW 51.08.178(2)—employment, exclusively and seasonal:

> the term "employment" means the work history or career pattern of the worker. "Exclusively" means that the employment is entirely dependent upon the seasons. "Seasonal" infers that the nature of the work is such that it can only be performed at certain times of the year.

Industrial Insurance Division, Washington State Department of Labor & Industries, *Claims Administration Policy Memo*, Policy 4.41 (June 2, 1988) (hereinafter 1988 *Policy Memo*).[1]

■ Were we to focus only on the terms "exclusively" and "seasonal," as Mr. Sanchez does, his reading of the statute would control. Certainly his job responsibilities were not dependent on the seasons. But "exclusively" and "seasonal" qualify the term "worker's employment." We are required to give effect to every word in the statute. *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 479, 745 P.2d 1295 (1987). The term "worker's employment," as defined by the Department, focuses our inquiry on the worker whose employment record is under consideration. It is "the work history or career pattern of the worker." 1988 *Policy Memo*.

■ The question before us then is not whether a "general farm laborer's" work is exclusively seasonal. Based on Mr. Sanchez's evidence, we would have to conclude it is not. Mr. Sanchez performed a variety of tasks entirely unrelated to the seasons such as stacking posts, repairing

---

[1]The Department issued a new Policy 4.41 effective April 20, 1992. It provides: "The work pattern is considered exclusively seasonal when work is entirely dependent on the seasons and no other work is performed by the worker." Washington State Department of Labor & Industries, *Claims Administration Policy Manual*, Policy 4.41, at 3 (Apr. 20, 1992). That policy was after the Department originally concluded Mr. Sanchez was a seasonal worker. Our analysis under the current policy would not differ.

machinery, and spreading cow manure. The question is rather whether Mr. Sanchez's "work history or career pattern" was exclusively seasonal. And here, his career pattern and work history was one of exclusively seasonal work. During his employment with Double D, Mr. Sanchez never worked during the months of December, January and February.

Were we to focus on the job rather than the work history, it is possible that employment would never be found to be seasonal. *Department of Parks v. Kinslow*, 481 S.W.2d 686, 688 (Ky. 1972) ("A classic example of a seasonal occupation is that of fruit picking in California. Yet . . . since fruit picking is being carried on somewhere in the United States every day throughout the year, the migrant worker is not engaged in a seasonal occupation."). Our interpretation of the statute is also in accord with its legislative history. During consideration of the bill adopting this section, a question directly addressed the purpose of the provision:

> Mr. Patrick: . . . [I]s it the intent that the language . . . which establishes the wage base on any twelve successive calendar months preceding the injury which fairly represents the claimant's employment pattern, mean the claimant's current employment pattern?
>
> Mr. Wang: The answer is "Yes."

House Journal, 50th Wash. Leg., at 1086 (1988).

We also conclude that "exclusively seasonal in nature" refers to the party's employment that is intermittent and part-time rather than restricted to a particular season. Limiting the phrase to employment exclusively in a particular season ignores the distinction between "season" which is a "time or period" and "seasonal" which is more general and refers to "relating to" or "being affected by seasons."[2] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 2049 (1969). The broader

---

[2]Even if one applies "season," that definition is broad enough to include "the period during which a particular agricultural activity is commonly performed

meaning of "seasonal" includes those jobs not limited to only a particular season but also those jobs related to a season or affected by a season. *Cf. Adams v. Department of Labor & Indus.*, 74 Wn. App. 626, 628, 875 P.2d 8 (1994) (impliedly recognizing seasonal work unrelated to particular seasons by stating, "[c]oncrete work is seasonal in Spokane, and [the respondent] worked full time through November 5 when the winter weather ended the season."), *aff'd*, 128 Wn.2d 224, 905 P.2d 1220 (1995).

Each year Mr. Sanchez was unemployed during approximately the same period of the year. His employment was normally and exclusively related to a particular time or period of time.

Substantial Evidence. The next question is whether substantial evidence supports the trial court's finding that "his employment would not have existed during the cold-weather months of the winter of 1990-1991."

██ The findings and decisions of the Board are prima facie correct and the party attacking them bears the burden of proof. *Belnap v. Boeing Co.*, 64 Wn. App. 212, 216-17, 823 P.2d 528 (1992). The party attacking the findings must establish by a preponderance of the evidence that the findings of the Board are incorrect. *Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 146, 736 P.2d 265 (1987); *Belnap*, 64 Wn. App. at 217. We will affirm if substantial evidence supports the court's findings. *Ravsten*, 108 Wn.2d at 146; *Belnap*, 64 Wn. App. at 217.

The superior court entered the following findings after reviewing the Board's record:

4. There was no work available for Mr. Sanchez at Double D from early November, 1988 through mid-March, 1989. Mr. Sanchez did not seek other employment and did not work during this period of time.

5. There was no work available for Mr. Sanchez at Double D from early November, 1989 through late February, 1990.

(the planting season)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 2049 (1969).

Mr. Sanchez did not seek other employment and did not work during this period of time.

. . . .

7. If Eduardo Sanchez had not been injured on November 9, 1990, his employment would not have existed during the cold-weather months of the winter of 1990-1991.

8. At the time of his injury, Eduardo Sanchez did not have a contract with Double D for year-round employment; his pattern of employment remained the same as it had been in 1988, 1989, and 1990.

Mr. Sanchez argues vigorously that, but for his injury, he would have worked during the winter of 1990-91. The trial court found otherwise. That finding is amply supported by evidence that he had never worked during the winter, and that his employer had no intention of hiring him during the winter of 1990-91. Don Desserault, the manager of Double D, testified that Double D employs only two people "full time" and that some years there are, no farm laborers employed during winter months.

Substantial evidence supports the trial court's findings.

Constitutional Rights. Finally, Mr. Sanchez argues that this statutory scheme violates his constitutional right to due process and equal protection of the law. U.S. Const. amend. XIV.

*Violation of Due Process Rights.* Mr. Sanchez first argues that the Department violated his due process rights by arguing a position contrary to its own rules, and second because the IAJ refused his request for rebuttal testimony.

He argues that an agency's deviation from its published regulations undermines public confidence in the agency's integrity and impartiality. Note, *Violation by Agencies of Their Own Regulations*, 87 HARV. L. REV. 629, 630 (1974). And conformity to the agency's rules ensures due process to the parties appearing before and affected by the agencies. *Service v. Dulles*, 354 U.S. 363, 77 S. Ct. 1152, 1 L. Ed. 2d 1403 (1957).

■ An applicant for workers' compensation benefits whose claim is not finally adjudicated has a property interest of sufficient magnitude to trigger procedural due process requirements. *Buffelen Woodworking Co. v. Cook*, 28 Wn. App. 501, 505, 625 P.2d 703, *review denied*, 95 Wn.2d 1020 (1981).

It is unclear, however, how counsel's argument on behalf of the Department violated Mr. Sanchez's due process rights. Even if the argument was contrary to the Department's policies (and it is not at all clear that it is), no deprivation of any liberty or property right occurred.

The IAJ's denial of Mr. Sanchez's rebuttal testimony also did not violate his due process rights. Mr. Sanchez was provided a hearing and allowed to present testimony on his behalf. In fact, he testified that he drove a double disk tractor, which is the same testimony he intended to offer in rebuttal. The rebuttal testimony, then, would have repeated his earlier testimony. *See, e.g., Vasquez v. Markin*, 46 Wn. App. 480, 493, 731 P.2d 510 (1986) (finding no error when court denied rebuttal evidence which was merely a repeat of earlier testimony), *review denied*, 108 Wn.2d 1021 (1987).[3]

*Violation of Equal Protection Rights.* Mr. Sanchez next claims the Department violated his equal protection rights because under the Department's policies it considers other workers, like construction workers, full time when their employment pattern shows regular and continuous employment interrupted only by job completion and unavoidable layoffs. Washington State Department of Labor & Industries, *Claims Administration Policy Manual*, Policy 4.41, at 3 (Apr. 20, 1992). He argues that the Department should not consider him seasonal because only "job completion" and unavoidable layoffs interrupt

---

[3]The case cited by Mr. Sanchez, *Surina v. Department of Labor & Indus.*, 34 Wn.2d 839, 210 P.2d 403 (1949), is distinguishable. There, the claimant was entirely unaware that the Department had concluded presenting its case and the court did not provide the claimant an opportunity to make an offer of evidence. Here, Mr. Sanchez made an offer of proof which indicated that the proposed rebuttal testimony repeated testimony he had already provided.

his regular and continuous employment. His argument continues that treating him as a seasonal worker deprives him of equal protection and discriminates against him invidiously since Hispanics constitute a large portion of non-management farm workers in eastern Washington yet only comprise a small percentage of construction workers. He argues that strict scrutiny applies since it impacts a suspect class of injured workers of racial minority. *Nielsen v. Washington State Bar Ass'n*, 90 Wn.2d 818, 820, 585 P.2d 1191 (1978). The Department must show that its interpretation is necessary to accomplish a legitimate and compelling state interest as applied. *Sugarman v. Dougall*, 413 U.S. 634, 93 S. Ct. 2842, 37 L. Ed. 2d 853 (1973).

■ We presume the constitutionality of a challenged statute. The burden of proving it unconstitutional rests with the challenger. *Campos v. Department of Labor & Indus.*, 75 Wn. App. 379, 384, 880 P.2d 543 (1994), *review denied*, 126 Wn.2d 1004 (1995). A court should not declare a statute unconstitutional unless it appears so beyond a reasonable doubt. *Campos*, 75 Wn. App. at 384. The first step in equal protection analysis is determining the standard of review. *Harris v. Department of Labor & Indus.*, 120 Wn.2d 461, 476, 843 P.2d 1056 (1993). If the statute involves neither a suspect classification nor a fundamental right, the court applies the rational basis test. *Campos*, 75 Wn. App. at 385.

■ Here, the appropriate standard of review is the rational basis test. The statute is economic legislation which neither sets up a suspect class nor affects a fundamental right. *Harris*, 120 Wn.2d at 477. Strict scrutiny is not triggered unless there is evidence of purposeful discrimination or intent. *Macias v. Department of Labor & Indus.*, 100 Wn.2d 263, 270-71, 668 P.2d 1278 (1983) (declining to apply strict scrutiny despite disparate impact on Hispanics employed in agriculture). Mr. Sanchez provides no evidence to suggest that the Department purposefully intended to discriminate.

■ Under the rational basis test, a statute violates

equal protection guaranties unless (1) it applies equally to all members within a designated class, (2) reasonable grounds exist to distinguish between those within and those without the class, and (3) classification is rationally related to its legislative purpose. *Harris*, 120 Wn.2d at 477. The statute meets all three criteria. It applies to all members of workers with employment that is "exclusively seasonal in nature" and does not preclude application to construction workers.[4] It is reasonable for the Department to distinguish between workers with seasonal employment and workers that are employed full time. If seasonal employees' wages were based on RCW 51.08.178(1), they would receive compensation that exceeds their usual earnings. The classification is rationally related to its legislative purpose.

The judgment of the trial court is affirmed.

THOMPSON and SCHULTHEIS, JJ., concur.

Reconsideration denied August 28, 1996.

Review granted at 133 Wn.2d 1001 (1997).

---

[4]The Department's policy Mr. Sanchez relies on also does not eliminate the possibility that construction workers would be found seasonal workers in certain circumstances. *See* Washington State Department of Labor & Industries, *Claims Administration Policy Manual*, Policy 4.41, at 3 (Apr. 20, 1992) ("Construction workers and workers from other similar industries are considered full-time when their employment pattern shows regular and continuous employment, interrupted only by job completion and unavoidable lay-offs."). Construction workers would be seasonal if their work pattern showed their work was entirely dependent on the seasons and they performed no other work.