920 P.2d 601 (1996)
83 Wash.App. 1
SCHOOL DISTRICT NO. 401, Respondent,
v.
Mary Ann MINTURN and the Department of Labor and Industries, Appellants.
No. 17459-6-II.
Court of Appeals of Washington, Division 2.
August 9, 1996.
As Amended on Denial of Reconsideration September 20, 1996.
As Amended October 25, 1996.
*602 Janet L. Smith, Thomas G. Hall & Associates, Seattle, for Respondent.
Mary Ann Minturn, pro se; and M. Catherine Walsh, Asst. Atty. Gen., Olympia, for Appellant.

OPINION
MORGAN, Judge.
The Department of Labor and Industries appeals a superior court determination that a school bus driver's compensation for temporary total disability should be computed under RCW 51.08.178(2), and not under RCW 51.08.178(1). We agree with the superior court's result.
In the 1980's, Pierce County School District No. 401 hired Mary Ann Minturn as a school bus driver. Several years later, on January 4, 1990, she was injured on the job.
Minturn worked only during the traditional school year (September to June). She was paid, however, throughout the calendar year. Each month, including the summer months, she received one-twelfth of her annual earnings.
During the 1988-89 school year (September to June), Minturn worked 1373.75 hours at a rate of $9.58 per hour. Thus, her school-year earnings were about $13,300, and she was paid about $1100 each month of the calendar year, including the summer months. By January 4, 1990, the date of her injury, her rate of pay had increased to $9.95 per hour.
After Minturn's injury, the Department computed her temporary total disability benefits, also called time loss compensation, as follows:
[R]eview of the wage information indicates that claimant[']s time loss should be calculated on hours worked for the school year 1988-89, total hours 1,373.75, times hourly wage of $9.95 = $13,668.81 divided by contracted days of 185 = $73.885 (per day) × 22 (work days) = $1,625.48 (gross wage per month) × (conjugal status) 69% = $1,121.58 (time loss rate per month).[1]
This method of computation had at least two effects. First, it treated Minturn as being employed only 8.4 months per year (185 work days per year, divided by 22 work days per month, equals 8.4 months). Second, it treated Minturn as earning all of her wages during those 8.4 months ($13,668 in annual wages, divided by 8.4 months, equals approximately $1,625 in monthly wages).
The Department ordered the District, a self-insured employer, to pay time loss compensation according to these calculations. The District appealed to the Board of Industrial Insurance Appeals, arguing that Minturn's monthly wages should be considered to be one-twelfth of her annual income, or about $1100 per month. An administrative law judge accepted the District's argument and recommended reversal of the Department's order. The Board affirmed the Department's order by 2-1 vote.
The District appealed again, this time to superior court. That court accepted the District's argument and reversed.[2] The Department then filed this appeal.
Presently, the parties agree that the Department properly ordered the District to pay Minturn 69% of her monthly wages. RCW 51.32.060(1)(c). They further agree that the Department was obligated to calculate monthly wages in accordance with RCW 51.08.178. They dispute, however, whether the calculation should have been made under *603 subsection (1) or subsection (2) of that statute.
RCW 51.08.178 provides in pertinent part:
(1) For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned. In cases where the worker's wages are not fixed by the month, they shall be determined by multiplying the daily wage the worker was receiving at the time of the injury:
....
(e) By twenty-two, if the worker was normally employed five days a week;
... The daily wage shall be the hourly wage multiplied by the number of hours the worker is normally employed. The number of hours the worker is normally employed shall be determined by the department in a fair and reasonable manner, which may include averaging the number of hours worked per day.
(2) In cases where (a) the worker's employment is exclusively seasonal in nature or (b) the worker's current employment or his or her relation to his or her employment is essentially part-time or intermittent, the monthly wage shall be determined by dividing by twelve the total wages earned, including overtime, from all employment in any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern.
By its terms, subsection (2) applies to cases in which the worker was engaged in intermittent employment at the time of injury.[3] In cases of that sort, the Department is required to divide by twelve "the total wages earned, including overtime, from all employment in any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern."[4]
By necessary implication, subsection (1) applies to cases in which the worker was engaged in non-intermittent (i.e., reasonably continuous) employment at the time of injury. In cases of that sort, the Department must use the employee's monthly salary, if there is one. If there is no monthly salary, the Department is to derive a realistic monthly wage by computing the product of three factors: (1) the employee's hourly wage on the date of injury, times (2) the number of hours in the employee's normal work day, times (3) 22 days per month (assuming the employee normally works five days per week).
The apparent reason for limiting subsection (1) to cases in which employment is non-intermittent is that the formula therein produces nonsensical results in cases in which employment is intermittent. Suppose, for example, that a worker regularly works the following four-week cycle at $10 per hour: Week 1 (five days per week, eleven hours a day); week 2, five days per week, eleven hours per day; week 3, five days per week, ten hours per day; week 4, no work. To apply subsection (1), we would multiply (1) the rate of pay ($10 per hour), times (2) the "normal" number of hours of work per work day (160 hours every three weeks, divided by 15 work days, for a "normal" day of 10.67 hours), times (3) 22 work days per month (because the worker is "normally" working five days per week). The result is a putative monthly wage of $2,347, when the worker's real or actual monthly wage is about $1,760. This nonsensical result occurs because the formula in subsection (1) presupposes non-intermittent, reasonably continuous employment, *604 while our example involves intermittent employment.[5]
Because the decision whether to apply subsection (1) or subsection (2) turns on the distinction between non-intermittent and intermittent employment, it becomes important to define intermittent employment. The Department defines it as follows: "Intermittent employment is not regular or continuous in the future. It may be full-time, extra-time or part-time and has definite starting and stopping points with recurring time gaps."[6] We accept this definition for purposes of this case.
This definition is not difficult to apply to the usual intermittent worker. For example, a seasonal farm worker often will have duties only during certain months. Correlatively, however, he or she will also receive pay only during those same months. Thus, job duties and job pay coincide, and the employment is clearly intermittent, assuming no off-season job.
This definition is harder to apply to a school district employee such as Minturn, because, when such an employee works for nine months but is paid over twelve, his or her employment has both intermittent and non-intermittent aspects. From the standpoint of job duties, the employment is intermittent; it starts in September, ends in June, and involves a recurring time gap during the summer months. From the standpoint of job pay, however, the employment is non-intermittent and reasonably continuous, for the employee receives one-twelfth of his or her school-district income during every month of the calendar year.
Today, we do not decide whether the Department must treat the employment of a school district employee as intermittent or non-intermittent.[7] Rather, we assume, without so holding, that the Department can properly utilize either alternative. We do decide, however, that regardless of which alternative the Department elects to use, it must act consistently. If it elects to treat an employee as employed during only nine months per year, it must apply subsection (2) of the statute, for the employee is not employed three months per year and the employment is intermittent. If it elects to treat an employee as employed twelve months per year, it may apply subsection (1), but it also must recognize that it is defining the employment as reasonably continuous and non-intermittent; that the employee is, by virtue of that definition, "working" all year; and that the employee's monthly wages are approximately one-twelfth of his or her annual income. It may not elect to treat the same employment as both non-intermittent and intermittent; being internally inconsistent, that approach is contrary to the statute, arbitrary and hence unlawful.
Here, the Department treated Minturn's employment as intermittent insofar as it calculated that she was working 8.4 months per year (185 working days per year, divided by 22 working days per month), and earning a monthly wage of $1,625 (pay of $13,668.81, divided by 8.4 months). Necessary corollaries were that Minturn was not working 3.6 months per year, and that she had no earnings during those months. At the same time, it attempted to treat her employment as non-intermittent, for it insisted on applying subsection (1), which addresses reasonably continuous employment, rather than subsection (2), which addresses intermittent employment. Predictably, the result was irrational in the sense that it failed to reflect reality (i.e., Minturn's actual monthly wages). We hold that the Department's method of calculation was arbitrary, and that Minturn's benefits must be recalculated.
*605 The judgment of the superior court is affirmed as modified, and the case is remanded to the Board for further proceedings consistent with this opinion.
BRIDGEWATER and TURNER, JJ., concur.
NOTES
[1] Exhibit 2, page 1.
[2] The superior court found for the District on grounds that Minturn was a "seasonal" worker. The Department argues on appeal that she was not a "seasonal" worker. Assuming the Department is correct, we think the superior court's result should be affirmed on other grounds, which we explain in this opinion.
[3] Subsection (2) also refers to part-time employment and seasonal employment, but these references add nothing to the concept of intermittent employment. Seasonal employment is one type of intermittent employment. The term "part-time employment" is ambiguous; it can mean employment that is continuous but less than 40 hours per week, or employment that is non-continuous (i.e., intermittent), regardless of the number of hours worked per week. RCW 51.08.178(2) uses the term in the latter sense. Thus, like seasonal employment, part-time employment is one type of intermittent employment. For a discussion of seasonal employment, see Double D. Hop Ranch v. Sanchez, 82 Wash.App. 390, 918 P.2d 174 (1996).
[4] RCW 51.08.178(2).
[5] A substantially similar example is discussed at pages 21-23 of the Department's supplemental brief. The Department suggests that we solve the problem by creating and inserting a missing fourth factor. The Department seeks to add this factor so that subsection (1) will be suitable for use in cases involving intermittent employment. The legislature, however, intended that subsection (2), not subsection (1), be used in cases involving intermittent employment.
[6] Brief of Appellant, Appendix A, page 3 (quoting Departmental Policy No. 4.41).
[7] Here, and throughout this opinion, we are discussing only the school district employee who works for nine months but is paid over twelve.