[No. 40516-4-II.   Division Two.   August 23, 2011.]

KEITH HUDSON ET AL., *Respondents*, v. UNITED PARCEL
SERVICE, INC., *Appellant*.

*William A. Masters* (of *Wallace Klor & Mann*), for appellant.

*Michael J. Costello* (of *Walthew Law Firm*), for respondent Keith Hudson.

*Robert M. McKenna, Attorney General,* and *Anastasia R. Sandstrom, Assistant,* for respondent Department of Labor and Industries.

¶1 Van Deren, J. — United Parcel Service Inc. (UPS) appeals from a jury verdict in favor of Keith Hudson, who

claimed time loss benefits through the Department of Labor and Industries (L&I). The jury reversed a Board of Industrial Insurance Appeals (Board) order reversing L&I's determination that Hudson's benefits should be calculated under former RCW 51.08.178(2) (1988), instead of former RCW 51.08.178(1). UPS argues that the trial court gave multiple erroneous jury instructions that require a new trial.[1] Finding no error, we affirm the jury's verdict and the trial court's order remanding to L&I to calculate Hudson's time loss under former RCW 51.08.178(2) and award Hudson attorney fees and costs under former RCW 51.52.130 (1993).

## FACTS

¶2 Hudson, a 56 year old male with a long work history, joined the United States Air Force in 1973. He was on active duty with the Air Force until 1979, when he became a reservist. Throughout his reserve service, he worked for several employers as a "senior network engineer." Adminis-

---

[1] UPS also argues that the trial court erred in denying its motion for summary judgment. For the first time in its reply brief, UPS argues that although it failed to appeal the trial court's denial of summary judgment before submitting the case to a jury trial and verdict, case law allows us to review the summary judgment issue. UPS further argues that the trial court based its denial of summary judgment on an erroneous understanding of the law. L&I urges us to treat UPS's request for review of the trial court's denial of its summary judgment motion as a substantial evidence challenge.

UPS cites a Division One decision, *McGovern v. Smith*, 59 Wn. App. 721, 734-35 & n.3, 801 P.2d 250 (1990), where that court held that it could review the trial court's denial of summary judgment because the trial court based its denial on a "substantive legal issue," not on "a determination that there were disputed issues of material fact." But here, the trial court based its denial of summary judgment on its determination that material issues of fact existed. Report of Proceedings (Sept. 18, 2009) at 26. Furthermore, we do not consider arguments raised for the first time in a reply brief. RAP 10.3(c); *see also Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Moreover, we generally do not review a denial of summary judgment after a jury trial. *See Johnson v. Rothstein*, 52 Wn. App. 303, 307-08, 759 P.2d 471 (1988).

Similarly, we do not accept L&I's invitation to restate UPS's grounds for appeal. L&I did not appeal, even though L&I now apparently agrees with UPS and the Board that Hudson's time loss compensation should have been calculated under former RCW 51.08.178(1), not former RCW 51.08.178(2).

trative Record (AR) (Hudson)[2] at 19-20. According to Hudson, he always worked full time.

¶3 In 2002, Hudson returned to active duty with the Air Force. On July 31, 2006, the Air Force discharged him because he had reached the maximum number of years of service. He testified that after his discharge, he intended to attend school full time and to work full time. He applied for several full-time positions while he received unemployment compensation. He was looking for "something that fit in [his] mold, something in computers, something in transportation, being that [he] was in transportation in the military." AR (Hudson) at 7.

¶4 According to Hudson, he applied for a "part-time, temporary, seasonal" driver position for UPS. AR (Hudson) at 34. Hudson accepted the offered position and began working for UPS on October 23, 2006. Hudson stated that he had no regular specified hours; instead, he called in each morning and if he was needed, he reported in at the assigned start time and worked until all deliveries were completed. There was no expectation of a full eight hours of work each day. Hudson received a UPS driver's permit that stated "[s]easonal employment only." AR (Hudson) at 39. His position was scheduled to end on either December 23 or 24.

¶5 According to Milt Crafton, the UPS Washington district risk manager, UPS hired Hudson as a "temporary full-time" driver. AR (Crafton) at 7. At UPS, a "full-time employee" was a "40-hour-a-week employee." AR (Crafton) at 6. UPS hired the temporary, full-time drivers during the peak shipping period of October 1 through December 31. UPS could retain temporary, full-time drivers as permanent employees based on shipment volumes and job performance. The primary job duty of both permanent and tem-

---

[2] The administrative record sections containing the testimony of Hudson and a UPS representative, Milt Crafton, are not numbered sequentially with the rest of the record. For clarity, we cite to those sections respectively as "AR (Hudson)" and "AR (Crafton)."

porary drivers was to pick up and deliver packages. This type of delivery was a year-round business, and UPS employed drivers year round. UPS sent both permanent and temporary drivers home if no work was available.

¶6 While working at UPS, Hudson applied for a full-time position as an "IT [information technology] tech" for a different employer. AR (Hudson) at 10. This was the type of work he had performed as a senior network engineer. He had not finalized his negotiations with the other employer, but it was "leaning more towards" offering him a position. AR (Hudson) at 11. The other employer wanted to hire him before December 23 or 24, but Hudson told that employer that he wanted to complete his job at UPS first.

¶7 On December 21, 2006, Hudson injured his back and stopped working for UPS. On May 31, 2007, L&I determined that he was entitled to time loss compensation payments and issued an order calculating his wages under former RCW 51.08.178(2) using the 12 month time period from January 1, 2004, through December 31, 2004. UPS protested the order, but L&I affirmed its original determination.

¶8 UPS appealed both L&I's classification of Hudson under former RCW 51.08.178(2) and the 12 month period L&I used to calculate his wages under the statute. An industrial appeals judge (IAJ) found that Hudson was not an "exclusively seasonal, essentially part-time, or intermittent worker" and concluded that calculation of his time loss payments was not proper under former RCW 51.08.178(2). AR at 21. The IAJ issued a proposed decision and order reversing L&I's order and remanding for calculation of Hudson's wages under former RCW 51.08.178(1). As a result, the IAJ did not address whether L&I had used the correct 12 month period under former RCW 51.08.178(2). Hudson petitioned the Board for review, which the Board denied, adopting the IAJ's proposed decision and order.

¶9 Hudson appealed to superior court. After UPS unsuccessfully moved for summary judgment, a jury heard the

case. The parties extensively argued about the jury instructions, which, due to the complexity of the issues, are laid out and analyzed later in this opinion.

¶10 The verdict form asked the jury, "Was the Board . . . correct in its determination that Mr. Hudson's employment was not exclusively seasonal, essentially part-time, or intermittent?" Clerk's Papers (CP) at 100. The jury determined that the Board was not correct, and the trial court entered an order and judgment reversing the Board and remanding to L&I for entry of an order that Hudson's employment was "exclusively seasonal, essentially part-time, or intermittent" and that calculated his time loss compensation under former RCW 51.08.178(2). CP at 59-60. UPS appeals.

## ANALYSIS

### I. JURY INSTRUCTIONS

¶11 UPS unsuccessfully objected to the trial court's jury instructions 7, 11, and 14. It appeals the trial court's rulings related to these jury instructions, as well as the trial court's instructions 12 and 13. In its briefing, L&I erroneously states that UPS objected to jury instruction 12 at trial but UPS did not object to either instruction 12 or instruction 13 at trial. UPS also appeals the trial court's rejection of its proposed instructions 8, 12, 14, 17, and 18 and its proposed special verdict form related to instruction 18.

### A. Standard of Review

¶12 RCW 51.52.140 provides that "the practice in civil cases shall apply to appeals prescribed in this chapter. Appeal shall lie from the judgment of the superior court *as in other civil cases.*" (Emphasis added.) Normally, our " 'review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings.' " *Ruse v. Dep't of*

*Labor & Indus.*, 138 Wn.2d 1, 5-6, 977 P.2d 570 (1999) (quoting *Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996)); *accord Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355, *review denied*, 167 Wn.2d 1015 (2009).

¶13 Here, however, because the parties submitted the case to a jury, we review jury instructions as we do in other civil cases. RCW 51.52.140. We review jury instructions de novo, "and an instruction that contains an erroneous statement of the applicable law is reversible error where it prejudices a party." *Thompson v. King Feed & Nutrition Serv., Inc.*, 153 Wn.2d 447, 453, 105 P.3d 378 (2005). "Jury instructions are sufficient when they allow counsel to argue their theories of the case, do not mislead the jury and, when taken as a whole, properly inform the jury of the law to be applied." *Thompson*, 153 Wn.2d at 453. But we presume that a " 'clear misstatement of the law' " is prejudicial. *Thompson*, 153 Wn.2d at 453 (quoting *Keller v. City of Spokane*, 146 Wn.2d 237, 249-50, 44 P.3d 845 (2002)).

B. Jury Instruction 7

¶14 UPS contends that the trial court erred in giving its instruction 7 and in rejecting UPS's proposed instruction 8 that added the statement "If you find the evidence equally balanced, then the findings of the Board must stand" to the trial court's instruction 7. CP at 21 (underline omitted). The trial court's instruction 7 provided:

> The findings and decision of the Board . . . are presumed correct. This presumption is rebuttable and it is for you to determine whether it is rebutted by the evidence. The burden of proof is on . . . Hudson to establish by a preponderance of the evidence that the decision is incorrect.
>
> When it is said that a party has the burden of proof on any proposition, or that any proposition must be proved by a "preponderance" of the evidence, or the expression "if you find" is used, it means that you must be persuaded, considering all the evidence in the case, that the proposition on which that

party has the burden of proof *is more probably true than not true.*

CP at 48.

¶15 UPS argues that the additional statement was necessary to inform the jury that the Board's decisions are prima facie correct. As our Supreme Court has observed, RCW 51.52.115's standards[3] apply in superior court appeals of board decisions:

> The Board's decision is prima facie correct under RCW 51.52.115, and a party attacking the decision must support its challenge by a preponderance of the evidence. On review, the superior court may substitute its own findings and decision for the Board's only if it finds "from a fair preponderance of credible evidence, that the Board's findings and decision are incorrect." *McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 390, 828 P.2d 1138 (1992).

*Ruse*, 138 Wn.2d at 5 (citation omitted) (internal quotation marks omitted).

¶16 Instruction 7 informed the jury that "[t]he findings and decision of the Board . . . are presumed correct," i.e., prima facie correct. CP at 48. Further, instruction 7 correctly stated that Hudson bore the burden of rebutting this presumption by a preponderance of the evidence and that the jury "must be persuaded, considering all the evidence in the case, that the proposition on which that party has the burden of proof *is more probably true than not true.*" CP at 48 (emphasis added). The trial court did not err in giving

---

[3] RCW 51.52.115 provides:

The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court as provided in RCW 51.52.110 . . . . In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same. If the court shall determine that the board has acted within its power and has correctly construed the law and found the facts, the decision of the board shall be confirmed; otherwise, it shall be reversed or modified.

this instruction or in refusing UPS's proposed instruction 8, and UPS's claim fails.

## C. Jury Instruction 11

¶17 UPS and L&I argue that the trial court erred in giving instruction 11 instead of UPS's proposed instruction 12. The trial court's instruction 11 provided:

The monthly time-loss compensation rate is determined using one of two methods:

Method 1

The monthly wages the worker was receiving from all employment at the time of injury. In cases where the worker's wages are not fixed by month, the monthly wages are established by multiplying the daily wage at the time of injury by the number of days the worker was normally employed, the daily wage being the hourly wage multiplied by the number of hours the worker is normally employed. The number of hours the worker is normally employed shall be determined by [L&I] in a fair and reasonable manner which may include averaging the number[ ] of hours worked per day.

Method 2

In cases where (a) the worker's employment is exclusively seasonal in nature or (b) the worker's current employment or his or her relation to his or her employment is essentially part-time or intermittent, the monthly wage is determined by dividing by twelve the total wages earned, including overtime, from all employment in any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern.

CP at 52-53 (boldface omitted). UPS's proposed instruction 12 added the statement, "When determining which method should be used Method 1 is the default method." CP at 25.

¶18 Former RCW 51.08.178(1)[4] stated:

For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall

---

[4] The legislature amended RCW 51.08.178 in 2007. Laws of 2007, ch. 297, § 1. These amendments do not affect our analysis.

be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned. In cases where the worker's wages are not fixed by the month, they shall be determined by multiplying the daily wage the worker was receiving at the time of the injury:

. . . .

. . . The daily wage shall be the hourly wage multiplied by the number of hours the worker is normally employed. The number of hours the worker is normally employed shall be determined by the department in a fair and reasonable manner, which may include averaging the number of hours worked per day.

For seasonal, part-time, or intermittent work, former RCW 51.08.178(2) provided:

In cases where (a) the worker's employment is exclusively seasonal in nature or (b) the worker's current employment or his or her relation to his or her employment is essentially part-time or intermittent, the monthly wage shall be determined by dividing by twelve the total wages earned, including overtime, from all employment in any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern.

¶19 Under its plain language, former RCW 51.08.178(1) applied—unless the worker was found to be a seasonal, part-time, or intermittent worker—and L&I must use it, unless L&I determined for a specific reason that it did not apply. *Dep't of Labor & Indus. v. Avundes*, 140 Wn.2d 282, 290, 996 P.2d 593 (2000). Hudson relies on instruction 7 to have accurately informed the jury that former RCW 51.08.178(1) was the default method for determining time loss compensation. We agree.

¶20 Jury instruction 7 informed the jury that the Board's decision was presumed correct and, here, the Board decided that the correct method of determining Hudson's time loss compensation was method 1 as set out in instruction 11. And instruction 7 clearly placed the burden on Hudson to prove by a preponderance of the evidence that the Board's decision was in error and that his time loss should be

calculated under former RCW 51.08.178(2). That is, Hudson had to persuade the jury that he was a seasonal, part-time, or intermittent worker. Thus, instructions 7 and 11 allowed UPS to argue that method 1 applied by default unless Hudson proved otherwise. Accordingly, instruction 11 was not an erroneous statement of the law, and it did not prejudice UPS and the trial court did not err in refusing UPS's proposed instruction 12. This claim fails.

D. Jury Instruction 14

¶21 UPS also contends that the trial court erred in giving instruction 14 because it "fail[ed] to advise the jury that if [a worker] maintains an off-season employment, then he is not an exclusively seasonal worker" and that "an off-season job defeats a finding of exclusively seasonal or essentially intermittent employment." Br. of Appellant at 37-38.

¶22 Instruction number 14 provided:

Intermittent employment is not regular or continuous in the future. It may be full-time, extra-time or part-time and has definite starting and stopping points with recurring time gaps.

To determine whether a worker performs intermittent work, a two part test is employed:

1. First evaluate the type of work performed, if the nature of the work performed is intermittent, the employment is intermittent, if not;

2. Evaluate the relationship of the worker to the employment to determine whether the relationship of the worker to the employment is intermittent. Relevant factors include the nature of the work, the worker's intent, the relation with the current employer and the worker's work history.

CP at 55.

¶23 Instruction 14 applied to the definition of intermittent, but not seasonal, employment. Instruction 12 defined seasonal employment. UPS cites *Double D Hop Ranch v.*

*Sanchez*, 133 Wn.2d 793, 799, 947 P.2d 727 (1997) and *School District No. 401 v. Minturn*, 83 Wn. App. 1, 6, 920 P.2d 601 (1996) in support of its argument. But *Double D Hop Ranch* involved defining seasonal, not intermittent, employment. 133 Wn.2d at 799-800. Thus, it does not apply to instruction 14.

¶24 In *Minturn*, we addressed whether L&I properly calculated a school district employee's time loss compensation under former RCW 51.08.178(2). 83 Wn. App. at 2, 7-8. We elaborated on the meaning of intermittent employment. *Minturn*, 83 Wn. App. at 6-7. We accepted "for purposes of [Minturn's] case" that intermittent employment was defined as " 'not regular or continuous in the future. It may be full-time, extra-time or part-time and has definite starting and stopping points with recurring time gaps.' "[5] *Minturn*, 83 Wn. App. at 6 (quoting *Minturn* Br. of Appellant, App. A at 3). We further explained:

> This definition is not difficult to apply to the usual intermittent worker. For example, a seasonal farm worker often will have duties only during certain months. Correlatively, however, he or she will also receive pay only during those same months. Thus, job duties and job pay coincide, and the employment is clearly intermittent, *assuming no off-season job*.
>
> This definition is harder to apply to a school district employee such as Minturn, because, when such an employee

---

[5] In *Minturn*, we discussed the relationship between "seasonal," "part-time," and "intermittent" employment under former RCW 51.08.178(2):

> Subsection (2) also refers to part-time employment and seasonal employment, but these references add nothing to the concept of intermittent employment. Seasonal employment is one type of intermittent employment. The term "part-time employment" is ambiguous; it can mean employment that is continuous but less than 40 hours per week, or employment that is non-continuous (i.e., intermittent), regardless of the number of hours worked per week. [Former] RCW 51.08.178(2) uses the term in the latter sense. Thus, like seasonal employment, part-time employment is one type of intermittent employment.

83 Wn. App. at 5 n.3. Essentially, we stated that "seasonal" or "part-time" employment overlaps with the definition of "intermittent" employment. As a necessary corollary, however, the inverse is not necessarily true. For example, a worker whose job requires them to work every other month full time might be "intermittent" under the *Minturn* court's definition, but not "seasonal."

works for nine months but is paid over twelve, his or her employment has both intermittent and non-intermittent aspects.

*Minturn*, 83 Wn. App. at 6-7 (emphasis added). But we ultimately did not decide "whether [L&I] must treat the employment of a school district employee as intermittent or non-intermittent." *Minturn*, 83 Wn. App. at 7. Rather, we limited our holding to stating that regardless of whether L&I classifies a worker under former RCW 51.08.178(1) or former RCW 51.08.178(2), it must calculate time loss compensation payments consistent with the formula provided in the statute under which it classified the worker. *Minturn*, 83 Wn. App. at 7-8. Because L&I's calculations were inconsistent with its classification of Minturn, we remanded the case to the Board for recalculation of her wages. *Minturn*, 83 Wn. App. at 7-8.

¶25 When viewed in context, our statement in *Minturn* that "the employment is clearly intermittent, assuming no off-season job" indicated that classifying a worker as intermittent is easier when a worker does not have an off-season job but more difficult when the employment has both intermittent and non-intermittent aspects. 83 Wn. App. at 6. We did not state that an off-season job automatically rendered a worker's employment non-intermittent.[6] Thus, the trial court need not have added the language that UPS asked for that stated, "[I]f [a worker] maintains an off-season employment, then he is not an exclusively seasonal worker." Br. of Appellant at 37.

---

[6] Our discussion in *Minturn* of the definition of intermittent employment was incidental to our decision. Statements made in the course of a court's reasoning that go beyond the facts before the court and are "wholly incidental" to the basic decision constitute obiter dicta and do not bind us. *Burress v. Richens*, 3 Wn. App. 63, 66, 472 P.2d 396 (1970); *see In re Estate of Burns*, 131 Wn.2d 104, 113, 928 P.2d 1094 (1997); *see also D'Amico v. Conguista*, 24 Wn.2d 674, 683, 167 P.2d 157 (1946); *see also State Auto Prop. & Cas. Ins. Co. v. Pro Design, PC*, 566 F.3d 86, 92 (3d Cir. 2009). But here, UPS recognizes, as do we, that there is little case law squarely addressing the definition of intermittent employment under the statute. Thus, we adopt *Minturn*'s language in our holding in this case because the definition of intermittent employment is directly relevant to the facts and issues before us.

¶26 The trial court's instruction 14 used *Minturn*'s definition of intermittent employment as employment that is not regular or continuous in the future. It may be full-time, extra-time, or part-time and has definite starting and stopping points with recurring time gaps. The trial court did not err in giving instruction 14 without UPS's proposed additional language, and UPS's claim fails.

### E. Jury Instructions 12 and 13

¶27 UPS argues that the trial court erred in giving instruction 12 because (1) it failed to instruct the jury to apply the *Avundes* test[7] to seasonal employment and (2) it failed to instruct the jury that "if [a worker] maintains an off-season employment, then he is not an exclusively seasonal worker" and "an off-season job defeats a finding of exclusively seasonal or essentially intermittent employment."[8] Br. of Appellant at 37-38. L&I agrees with UPS that the trial court erred in not instructing the jury that " '[e]xclusively seasonal work assumes that claimant has no off season job.' " Br. of Resp't (L&I) at 28 (alteration in original) (quoting Clerk's Papers at 28). Instruction 12 provided, "A worker's employment is exclusively seasonal in nature if it is characterized by a particular activity that is entirely dependent on a period of the year." CP at 53.

¶28 UPS further argues that the trial court erred in giving instruction 13, defining "part-time" employment, instead of UPS's proposed instructions 14 and 17, defining "part-time" and "normal" employment.[9] L&I agrees and

---

[7] *Avundes*, 140 Wn.2d at 287, 290.

[8] Even though we do not accept review of jury instruction 12, our discussion of jury instruction 14 resolved this second issue. The trial court need not have added the language UPS asked for in instruction 14, nor need it have added the language here that "if [a worker] maintains an off-season employment, then he is not an exclusively seasonal worker." Br. of Appellant at 37.

[9] UPS's proposed instruction 14 stated:

Normal employment is where a worker is engaged in reasonably continuous employment at the time of injury. If a normal number of work days can be

further argues that the trial court erred in giving instruction 13 because it failed to instruct the jury to apply the *Avundes* test to part-time employment. Instruction 13 informed the jury that "[p]art time employment is that in which an employee is not normally employed a specified number of days per week." CP at 54.

¶29 We recognize that interpretation and application of former RCW 51.08.178 is difficult and complex, that crafting appropriate jury instructions in these cases is correspondingly difficult, and that additional case law or legislative clarification would greatly assist L&I and litigants. But UPS failed to object to jury instructions 12 and 13 at trial and failure to object to jury instructions waives the issue on appeal. *Estate of Ryder v. Kelly-Springfield Tire Co.*, 91 Wn.2d 111, 114, 587 P.2d 160 (1978). "Instructions to which no exceptions are taken become the law of the case." *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 917, 32 P.3d 250 (2001). Because UPS did not object to instructions 12 and 13 at trial, it failed to preserve objections to them on appeal; they are the law of this case and we do not review

---

established, and the worker's daily wage is known, the worker is normally employed.

In other words, if the type of position exists year round in the general labor market, then the worker is normally employed. Alternatively, when a worker strings together or intends to string together consecutive jobs year round, then the worker is normally employed.

CP at 27.

UPS's proposed instruction 17 stated:

A worker who is not employed in a typical 40-hour per week position may or may not be [a] part-time worker within Method 2 of determining a worker's monthly wages as of the date of injury. Simply because a worker works fewer days than might be considered typical, the worker's wages may, in fact, be appropriately determined using Method 1.

The analysis requires a determination of whether the worker has a normal number of work days each week that can be readily determined. It is not required that the days worked[ ] be the same days worked each week. It is only required that the worker work a normal number of days each week. If the worker works a normal number of days each week his monthly wages should be determined using Method 1. If the worker does not work a normal number of days each week his monthly wages should be determined using Method 2.

CP at 30.

them or UPS's proposed instructions 14 and 17.[10] *Guijosa*, 144 Wn.2d at 917; *Ryder*, 91 Wn.2d at 114.

## II. ATTORNEY FEES

¶30 Hudson requests an award of attorney fees and costs under former RCW 51.52.130. Former RCW 51.52-.130(1) authorizes an award of attorney fees in an appeal where the Board's decision "is reversed or modified." Because we affirm the jury's verdict reversing the Board's decision, Hudson is entitled to attorney fees and costs under former RCW 51.52.130.

¶31 We affirm the jury's verdict and the trial court's order reversing the Board's determination that Hudson's time loss compensation should be calculated under former RCW 51.08.178(1) and remanding the case to L&I to calculate Hudson's time loss compensation under former

---

[10] UPS also argues that the trial court erred in not giving UPS's proposed instruction 18 and proposed special verdict form relating to the proper 12 month period to be used when calculating Hudson's time loss compensation because the relevant statutes and case law allow the trial court to substitute its own findings for the Board's findings and because remanding back to L&I would violate doctrines of judicial efficiency if another appeal arose from a new, adverse L&I ruling. L&I agrees that the trial court erred in not giving UPS's proposed instruction 18 because the issue was a factual one and "a necessary component of determining that . . . Hudson was subject to [former] RCW 51.08.178(2)" and UPS was entitled to have it decided by the jury. Br. of Resp't (L&I) at 29-31.

In his brief, Hudson argues that no prejudice resulted because on remand, L&I determined that the applicable 12 month period was the time period immediately preceding his injury. This information was not part of the record on appeal but, at oral argument, the parties confirmed Hudson's statement. Moreover, at oral argument the parties did not dispute that they had agreed that the applicable 12 month period was that period immediately preceding Hudson's injury. They also agreed that their stipulation that the 12 month period immediately preceding Hudson's injury would control in any remand to the trial court if the jury found that his time loss compensation should be calculated under former RCW 51.08.178(2). Thus, we hold that this issue UPS raised in its appeal regarding its proposed instruction 18 is moot as the parties have resolved the matter and we do not further discuss it.

RCW 51.08.178(2). We also award Hudson attorney fees and costs under former RCW 51.52.130.

PENOYAR, C.J., and JOHANSON, J., concur.